IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAMELA J. KEY,

               Plaintiff,

     v.

UNUM LIFE INSURANCE INSURANCE
COMPANY OF AMERICA,

               Defendant.

                       OPINION AND ORDER

                       07-cv-695-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The question in this case brought under the Employment Retirement Income and Security Act of 1974, 29 U.S.C. §§ 1001-1461, is whether defendant UNUM Life Insurance Company of America's decision to deny plaintiff Pamela Key long term disability benefits was arbitrary and capricious.  Because I conclude that it was, I will deny defendant's motion for summary judgment and, on the court's own motion, I will grant summary judgment in favor of plaintiff.  Although plaintiff did not file her own motion for summary judgment, a district court can enter summary on its own motion "under certain limited circumstances." Simpson v. Merchants Recovery Bureau, Inc., 171 F.3d 546, 549 (7th Cir.1999). In this case, because defendant had notice that the court would be considering summary judgment and because the evidence is limited to the administrative record, summary judgment in favor

1

of plaintiff is appropriate even though plaintiff did not file her own motion. Id.

From the parties proposed findings of fact and the administrative record, I find the following facts to be undisputed.

UNDISPUTED FACTS

A. Background

In 2003, plaintiff Pamela Key was employed full time as an office assistant at Gundersen Lutheran Administrative Services Inc.  She was 50 years old at the time. Plaintiff's responsibilities included supporting the secretarial activities of her department. Her job required her to sit for long periods of time working on a personal computer.   In addition, she was required to work 40 hours a week.

In December 2003, plaintiff was injured in a car accident.  On or about December 8, 2004 she filed a claim for benefits under a disability insurance policy issued by defendant UNUM Life Insurance Company of America to Gundersen Lutheran and its employees. Plaintiff claimed that she was unable to work after December 9, 2004 because of the effects of the December 2003 car accident.  Plaintiff did not return to work at Gundersen after December 8, 2004.

B. Disability Policy

2

Defendant's policy includes the following definitions:

You are disabled when UNUM determines that:

– you are limited from performing the material and substantial duties of your regular occupation due to your sickness and injury;
– and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

. . . .

**LIMITED** means what you cannot or are unable to do.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

– are normally required for the performance of your regular occupation; and
– cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, UNUM will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

. . . .

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins.  UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

The policy also provides:

The policy is delivered and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.  When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits

3

and to interpret the terms and provisions of the policy.

C. Plaintiff's Disability Claim and Medical Records

In her claim, plaintiff said that a neck injury prevented her from sitting and working at a computer.  In the Attending Physician Statement plaintiff submitted with her claim, her doctor, Dr. Timothy Harbst, diagnosed plaintiff with neck and upper back pain and indicated that plaintiff was unable to work as of December 8, 2004.  He also indicated that plaintiff was restricted from lifting, pushing, pulling and keyboarding on a computer and was limited from lifting, pushing or pulling over 10 pounds.

Plaintiff provided medical records to defendant, which included clinic notes from her treating physicians and other health care providers.  These are summarized below:

**March 8, 2004.**  Plaintiff is taking ibuprofen regularly "because she continues to have a lot of pain and headaches."  She is seeing a physical therapist and a chiropractor, "but she continues to have pain."  Under the heading "social history," the note states, "she is back to running and feels great."

**March 15, 2004.**  Plaintiff has persistent discomfort localized to the left cervical, upper back, and mid back region midline resulting from her December 2003 car accident. Dr. Harbst diagnosed plaintiff with persistent cervical and upper mid back pain symptoms that appear musculoskeletal in nature, including muscle imbalances with weakness in

4

anterior cervical flexors and scapular stabilizers. He prescribed medications to treat symptoms of muscle tightness and pain and to assist with headaches and sleep. Plaintiff tried a TENS unit and Lipoderm patches and did not find either to be useful. Dr. Harbst recommended that plaintiff continue physical therapy to address muscle imbalances and noted other options for care.

**May 18, 2004.** Despite physical therapy, plaintiff continues to have headaches and "pain in the left sided cervical paraspinals and upper trapezius."

**September 15, 2004.** An MRI reveals some degenerative change and spurring at the C 4-5 level, resulting in moderate foraminal stenosis on the left.

**October 19, 2004.** Plaintiff has been through a fairly extensive conservative management and steroid epidurals two times. She states that these have yielded no benefit whatsoever. A cervical MRI shows 4-5 foraminal narrowing on the left consistent with the location of her pain.

**October 22, 2004.** Plaintiff complains of increasing pain, "an average of 5-6 out of 10, but it can vary between 3 to 8 out of 10."

**November 8, 2004:**

Ms. Key's symptoms seem to be multifactoral. . . Over the last two weeks, she has now been off work. She states that while she is away from work, she is able to self-regulate and manage her symptoms, and her symptoms are under much better control. . . Given the fact that she has been through extensive care and treatment, at this time the only other offers are as follows: 1) Support her reduced work load. We

will write a note indicating that she should limit her work day to 5 hours a day. This will be good between now and the end of the year.

**November 22, 2004.** Dr. Jerry Davis, a neurosurgeon at Gundersen Lutheran, found that plaintiff

> currently has pain in the left paraspinal musculature area of the neck that goes into the left trapezius muscle. It does not radiate into either arm or into her legs. She has no weakness, difficulty walking, numbness, or tingling. She has tried physical therapy, chiropractic therapy, and has had nerve blocks involving the C-4, C-5 and C-6 nerves all without any significant relief. She finds that work significantly aggravates her symptoms, so that by the end of the day she has a severe posterior headache. Even at home, however, most activities, if done long enough, aggravate her symptoms.

Dr. Davis concluded that plaintiff is not a surgical candidate. He thought it was important for plaintiff to consider the possibility of total disability. He referred plaintiff to Dr. Harbst and on to Dr. Porter for consideration of employment modification.

**December 1, 2004.** Dr. Stephen Porter, Ph.D. performed a vocational evaluation of plaintiff. He recorded that plaintiff had been working 5 hours per day and that her co-workers could not "cover for her" for too much longer. He noted that plaintiff's department had completed an ergonomic evaluation and implemented strategies to provide maximal support to plaintiff in the workplace and that plaintiff had explored other employment options within Gundersen Lutheran. As part of Dr. Porter's evaluation, plaintiff completed the O'Net Ability Profiler test developed by the U.S. Department of Labor to measure her skill and ability in areas associated with success in the competitive workforce.

6

Porter concluded the following:

- Plaintiff put forth a good effort throughout the test session.

- An objective interpretation of plaintiff's profile using the occupational aptitude pattern structure as developed by the U.S. Department of Labor showed that she did not meet the minimum criteria to be successful in her basic occupational group, which included clerical machine operation and/or clerical handling.

- If plaintiff cannot "continue in her current job category as a limited part-time employee, the prognosis that she could slip into another job and be productive is at best very, very, very poor." Plaintiff's occupational class is very sedentary and light duty.

**December 8, 2004.** Plaintiff's symptoms include chronic cervical and upper back pain for most activities that involved leaning forward, bending or twisting her head and severe headaches. Plaintiff's work duties involving lifting, pushing, pulling, as well as sitting at a desk and computer terminal aggravated her symptoms, desk work required her to hold her head in certain positions that were not tenable and the physical work aggravated her symptoms.

She has been through extensive care and treatments in the past, including physical therapy, massage therapy, chiropractic care, and numerous injections to the neck. She has

tried a variety of medications.

Plaintiff is "plateauing" in her care. It is recommended that plaintiff follow up in 6-8 weeks "so we may reassess her once she has had time away from the work force for a meaningful period of time.  If at that time symptoms certainly are unchanged, then in all likelihood her prognosis is poor for any additional improvement."

### D. Defendant's Evaluation of Plaintiff's Claim

In February 2005, defendant provided plaintiff's medical records to Dr. Pat Younger, an orthopedic surgeon and consulting physician to defendant.  Dr. Younger reviewed plaintiff's medical records and came to the following conclusions:

- Plaintiff suffered from a degenerative disc at C 4-5 with protrusion of disc material and osteophytic spurring that cause L neural foraminal stenoses.

- Plaintiff had no recorded biceps reflex change, weakness to the deltoid muscle, or numbness over the deltoid and neither a compression test for nerve root pain or a traction test for relief of pain had been recorded.

- Plaintiff's examinations and findings had been primarily subjective in nature.

Younger included the following in his report:

> The question that arises is why would this non-radicular pain from a degenerative process at one year post injury be so incapacitating that an individual could not do light

8

> sedentary work that she had been doing for 14 years prior? The diagnosis and her physical examination do not support a restriction of not being able to do her present work.

Dr. Younger recommended that an independent medical evaluation should check plaintiff's MRI, check her for cervical range of motion and do a compression test for radicular findings.

Defendant retained Dr. Bruce Davey, an orthopedic surgeon, who performed an independent medical examination of plaintiff. After summarizing plaintiff's medical record, Dr. Davey reported the following:

> Physical examination revealed a healthy-appearing middle-aged woman who was not overweight. She appeared truthful during the evaluation and did not appear to be in any discomfort. She was able to climb on and off the examination table without difficulty. Examination of the cervical spine revealed a normal contour with no evidence of muscle spasm. Range of motion testing revealed approximately 50% of flexion and extension with complaints of pain at the extremes of both, particularly extension. She had full bending to the left, but complained of tightness on the left with full bending to the right. The foraminal compression test was negative. The neurologic examination consisting of motor, sensory, and reflect evaluation in the upper extremities was symmetrical and unremarkable. There was no atrophy comparing the circumference of the arms and forearms. No scapular winging was noted. She had discomfort to palpation in the area of the root of the neck on the left, extending down into the trapezius muscle. There was no specific tenderness about the shoulder itself. There was some mild tenderness down toward the supermodial tip of the scapula.

> Ms. Pamela Key likely sustained a cervical strain at the time of the automobile accident in December 2003. She had preexisting degenerative change with foraminal stenosis at the left 4-5 level. I agree with her neurosurgeon, that her lack of radicular symptoms mitigate against a surgical solution to her problem. The MRI would also

9

indicate a chronic problem and not one that necessarily would lead to radicular symptoms, as the nerve root compression does not appear to be severe. Her subjective complaints outweigh her objective findings, and the natural course of this type of condition is generally slow improvement. Since she does sedentary work and is able to take breaks during the course of her employment, I believe that she should be able to be gainfully employed at her old occupation. I would concur with a restriction of no lifting more than 10 pounds, but this should not interfere with her job. I do not agree that she should be restricted against using a typewriter or keyboard. She should be allowed to switch positions and get up and stretch periodically. The above restrictions should probably be considered permanent, as the degenerative change in her cervical spine is permanent.

Defendant provided a copy of Dr. Davey's report to Dr. Harbst for review and comment.

On April 21, 2005, Dr. Harbst responded to defendant's letter and report and wrote:

While Ms. Key has been under my care since March of 2004, despite work modifications and receiving reasonable and appropriate interventions including physical therapy, medication and cervical epidural steroid injections, her symptoms did persist. She found that her symptoms would escalate as the day goes on and by the end of the day she was essentially non-functional by the time she went home. She also was having frequent headaches by the end of the work day. Much of this was consistent with a muscle tension-type headache secondary to her pain.

Since leaving the workforce, Ms. Key's pain has come under much better control. She continues to pace herself and finds that in an unstructured environment she is able to alternate her tasks so that symptom management is much more successful. She does not rely on medications as she once needed to do.

It is based on this history of pain, and limitation of function, while in the workforce, versus her significantly improved quality of life and less pain while not in the workforce, that I feel that she is a candidate for long term disability. Unfortunately, as you are aware, there is no objective test to measure pain. I have known Ms. Key for many years. She has always been a very straightforward and hard working person. I can quite adamantly state that she is not malingering or magnifying

any of her symptoms.

Dr. Younger reviewed Dr. Harbst's response and did not change his previous opinion

that plaintiff could return to her occupation.

### E. Defendant's Denial of Benefits and Plaintiff's Appeal

Defendant denied plaintiff's claim for long term disability benefits in a letter dated

May 10, 2005:

> The clinical consultant indicated that your main symptom is self
> reported, and although there are some findings on the MRI, it is not clear as
> to why you would be deemed totally disabled at this time.  The clinical
> consultant also determined that a full medical review by one of our on-site
> physicians would be appropriate . . . This physician concluded that your
> diagnosis and physical examination do not support a restriction of not being
> able to do your present work.  In addition, the physician concluded that an
> Independent Medical Examination (IME) would be necessary to clarify your
> condition and work capacity . . . The IME physician concluded that you
> should be able to be gainfully employed at your old occupation. He concurred
> with the restriction of no lifting greater than 10 pounds, but also noted that
> this should not interfere with your job . . . The IME physician also noted that
> he  did not agree that you should be restricted against using a typewriter or
> keyboard . . . We forwarded a copy of this IME report to . . . Dr. Harbst .
> . . and we requested a response. . . Our on-site physician completed his review
> of Dr. Harbst's response . . . and concluded that no new cogent information
> was provided and that he agreed with the IME provider that your symptoms
> should not be great enough to prevent your usual sedentary work.

Plaintiff appealed defendant's denial of benefits on October 14, 2005.  As part of the

appeal process, defendant retained Dr. Avrom Gart of Cedars Sinai Institute for Spinal

Disorders to conduct a review of plaintiff's medical records and provide an opinion on her functional capacity. After reviewing the independent medical examination performed by Dr. Davey, Dr. Gart provided an addendum to his report and said that in light of Dr. Davey's findings, he would not place restrictions on plaintiff's use of a typewriter or keyboard. Dr. Gart also recommended that plaintiff have a C-5 selected nerve root block; if the root block relieved plaintiff's pain, then she could be considered for surgery.

After determining that plaintiff had a 20% or more loss in earnings from November 8, 2004 to December 8, 2004 because she worked part time, defendant asked Dr. Gart to say whether plaintiff's work restriction of five hours a day during this period was supported by her medical records. Dr. Gart found that during this period, the part-time work restriction was supported.

As part of the appeal process, defendant conducted an occupational analysis of plaintiff's occupation in order to determine the material and substantive duties of her position. Defendant's vocational rehabilitation consultant concluded that considering the restrictions and limitations Dr. Gart presented of no lifting of over 10 pounds, plaintiff could perform the material and substantial duties of an office assistant.

On January 30, 2006, defendant affirmed its denial of plaintiff's claim for long term disability benefits on the ground that plaintiff provided insufficient evidence that her pain totally disabled her from working in her sedentary occupation. Defendant also concluded

12

that Dr. Davey's determination was reasonable; plaintiff's only supported restriction was that she not lift more than 10 pounds.

On January 9, 2007, the Social Security Administration determined that plaintiff was disabled and she was awarded Social Security Disability benefits retroactive to June 2005. Plaintiff provided a copy of her award letter to defendant on February 26, 2007 and requested that defendant reconsider its denial of long-term disability benefits.

On March 8, 2007, defendant declined to reconsider its denial citing the completion of plaintiff's appeal on January 30, 2006 and her lack of administrative remedies.


OPINION

Because the plan gives defendant discretionary authority to determine eligibility for benefits, the parties agree that the standard of review in this case is whether defendant's denial of benefits was an arbitrary and capricious application of the plan. Firestone Tire and Rubber v. Bruch, 489 U.S. 101, 115 (1989). The court of appeals has stated that such review is deferential but

> it is not a rubber stamp and a denial of benefits will not be upheld when there is an absence of reasoning in the record to support it. Therefore, this court will uphold the Plan's determination as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

13

Williams v. Aetna Life Insurance Co., 509 F.3d 317, 321-22 (7th Cir. 2007) (internal quotations omitted).

The parties also agree that Metropolitan Life Insurance v. Glenn, 128 S. Ct. 2343 (2008), applies to this case.  In Metropolitan Life, the Supreme Court held that district courts reviewing a denial of benefits in an ERISA case should consider whether the defendant is responsible for determining eligibility for benefits as well as paying them out. If it is, the court should consider the conflict of interest as a "factor" when determining whether a denial of benefits was arbitrary and capricious.  (The parties did not propose any facts regarding whether defendant performs both functions, but defendant appears to concede in one of its briefs that it does.  Dkt. #37.)

Although the Court made it clear that the significance of the factor depends on the facts of the particular case, Metropolitan Life, 128 S. Ct. at 2351, plaintiff does not develop any case-specific arguments.  She says only that Metropolitan Life is "on point," dkt. #36, at 1, which does not shed any light on the question.  In any event, I need not belabor the issue because I conclude that defendant's decision was arbitrary and capricious regardless whether a conflict of interest existed.

In this case, the plan defines a disabled person as someone who has "a 20% or more loss in your indexed monthly earnings due to the same sickness or injury" and is unable to perform the duties "normally required for the performance of your regular occupation; and

14

cannot be reasonably omitted or modified."  There is no dispute that plaintiff met the first part of the definition of disability; the question is whether she could perform the duties required by her job.

Plaintiff supported her claim for disability with the results of her MRI, the results of an occupational assessment test, the opinions of her treating physicians and her own reports of pain.  In its brief in chief, defendant's argument is simply that the opinions of plaintiff's doctors were "conclusory," dkt. #19, at 13, and the opinions of the doctors it consulted were reasonable.  Both views are problematic.

Plaintiff's medical records painstakingly document the many efforts she made over the course of a year to treat her pain:  medication, physical therapy, chiropractic care, steroids and ergonomic modifications.  None were successful and all the reviewing doctors agreed that surgery was not an option for her.  In her medical records, both plaintiff and her doctors described the symptoms she suffered at work.  She had chronic cervical and upper back pain for most activities that involved leaning forward, bending or twisting her head and severe headaches. Her pain was aggravated while using a keyboard because of the position in which she was required to hold her head.  By the end of the workday, she had "severe posterior headaches."

In concluding that plaintiff could perform her job, neither defendant nor its doctors identified any problems with the reports of plaintiff or her treating physicians or identified

15

any other evidence that plaintiff should provide to support her claim. Instead, they simply said that the symptoms plaintiff reported were greater than what the objective evidence would suggest. This much appears to be undisputed. None of plaintiff's doctors argued that the MRI or physical examinations showed the type of injury that necessarily would cause the type of pain that plaintiff was experiencing.

However, this still leaves plaintiff's subjective reports of pain. The Court of Appeals for the Seventh Circuit has held that a plan administrator may not deny benefits simply because symptoms are subjective, Hawkins v. First Union Corporation Long Term Disability Plan, 326 F.3d 914 (7th Cir. 2003), and neither defendant's decisions nor its doctor's opinions discredited plaintiff's reports of pain. Rather, the only comment by defendant's doctors on this point was that plaintiff "appeared truthful."

This is not a case like Williams v. Aetna Life Insurance Co., 509 F.3d 317, 321-22 (7th Cir. 2007), in which both the plaintiff and her treating physician failed to provide any information regarding why and to what extent a subjective symptom was debilitating. Again, plaintiff and her doctors explained that sitting in a chair and using a keyboard caused her "severe" pain by the end of the day. Although Dr. Davey wrote that plaintiff could deal with her pain by "switch[ing]positions" and "stretch[ing] periodically," neither he nor defendant explained why that would be an adequate accommodation. Even more problematic, this view ignores plaintiff's year-long attempt to find ways to treat and accommodate her pain,

16

including physical therapy, "an ergonomic evaluation" and "strategies to provide maximal support to plaintiff in the workplace." In rejecting plaintiff's claim, defendant simply disregarded all the unsuccessful efforts plaintiff made to treat her pain and keep working. It is not reasonable to assume without explanation that simple stretching would be sufficient to permit plaintiff to work when much more aggressive measures failed to provide her with relief.

Defendant's decision has other problems as well. First, defendant ignored the vocational evaluation, in which Dr. Porter concluded that plaintiff was unable to perform even sedentary work, despite a "good effort" she put forward during the evaluation. Defendant attempts to explain in its brief why Dr. Porter's assessment is not persuasive, but none of these reasons were cited in defendant's decisions. As defendant itself points out, the scope of a court's review is limited to the record the plan administrator had before it at the time that the benefits determination was made. See, e.g., Donato v. Metropolitan Life Insurance Co., 19 F.3d 375, 380 (7th Cir. 1994); Smart v. State Farm Insurance Co., 868 F.2d 929, 936 (7th Cir. 1989). Thus, defendant cannot "fix" an inadequate decision by trying to supplement it before this court.

Finally, the determination by defendant that plaintiff was not disabled after December 8, 2004 cannot be squared with its consultant's decision that she *was* disabled from November 8, 2004, to December 8, 2004. Specifically, the consultant concluded that

17

plaintiff could work only five hours a day from November 8 to December 8.  Under the plan, a person is disabled if she is unable to perform the duties that "are normally required for the performance of [her] regular occupation; and cannot be reasonably omitted or modified." Thus, when a position such as plaintiff's requires a person to work full time, a person is disabled if she is capable of working only part time.  The consultant provided no explanation for the conclusion that plaintiff could work full time after December 8 but could not work full time from November 8 to December 8, even though the evidence to support both claims was exactly the same.   This puzzling disparity is enough by itself to conclude that defendant's decision was arbitrary and capricious.

Defendant says that its decision "mirrors [the] approach" it took in <u>Davis v. Unum Life Insurance Co. of America</u>, 444 F.3d 569 (7th Cir. 2006), a case in which the court upheld the decision to deny benefits.  Although defendant's "approach" may have been similar, the facts in <u>Davis</u> were so different that the case sheds no light on the proper resolution of this case. To begin with,  the question in <u>Davis</u> was whether the plaintiff could perform *any* job, not just his own, because he already had been receiving disability benefits for two years.  In addition, the plaintiff had numerous credibility problems and his treating physicians gave inconsistent opinions about the nature and extent of his disability.  Despite these problems, the administrator agreed with the plaintiff that he could not walk or stand for long periods of time.  It rejected the claim only because the plaintiff had adduced no

18

evidence that he was unable to perform sedentary work.

In this case, defendant has identified no problems with plaintiff's credibility; she has adduced evidence that she cannot do the tasks required of her job and her treating physicians are unanimous in that conclusion.  <u>Davis</u> is not instructive.  Rather, I agree with plaintiff that defendant's decision in this case is closer to that in <u>Hackett v. Xerox Corporation Long Term Disability Income Plan</u>, 315 F.3d 771, 775-76 (7th Cir. 2003), in which the court concluded that a decision terminating benefits was arbitrary and capricious because the administrator had relied on the opinion of a doctor who did not explain the basis for his opinion or why it differed from the opinions of the plaintiff's treating physicians.

I do not agree with plaintiff that defendant was required to consider the Social Security Administration's decision that plaintiff was entitled to disability benefits.  As defendant points out, the Social Security decision came out after defendant had closed plaintiff's case.  A decision to deny benefits cannot be arbitrary and capricious for failing to take into account information that did not yet exist.  Further, plaintiff points to no authority that would require an administrator to reopen a case to reconsider its decision in light of new facts that arose after the case was closed.

Even without considering defendant's refusal to reopen the case, I conclude that defendant's decision was arbitrary and capricious because it failed to provide a "reasoned explanation" that considered "the relevant factors that encompass the important aspects of

19

the problem." <u>Williams</u>, 517 F.3d at 321-22.  In accordance with <u>Hackett</u>, 315 F.3d at 775-76, I will remand the case to defendant to reconsider its decision in light of the deficiencies identified in this opinion.


ORDER

IT IS ORDERED that

1.  Plaintiff Pamela Key's motion to file supplemental authority, dkt. #36, is GRANTED.

2. The motion for summary judgment filed by defendant Unum Life Insurance Company of America, dkt. #18, is DENIED and summary judgment is GRANTED to plaintiff Pamela Key on the court's own motion.

3. The case is REMANDED to defendant to conduct a full and fair review of plaintiff's qualification for disability benefits.  Defendant may have until October 1, 2008, in which to conduct the fresh review of plaintiff's claim and report to the court the result of the review.  Plaintiff may have until October 15, 2008, in which to advise the court whether

20

she objects to the review process or the benefit determination and why.

Entered this 20th day of August, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge